UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YEDIDA KHADERA, KEVIN HUDSON, SAM RICHARDSON, and ROBERT WASSON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>ABM INDUSTRIES INCORPORATED and AMERICAN BUILDING MAINTENANCE CO. - WEST,<br><br>Defendant. | CASE NO. C08-0417RSM<br><br>ORDER ON MOTION TO EXCLUDE TESTIMONY OF DR. ABBOTT |

This matter comes before the Court on Defendants' Motion to Exclude and Strike Expert Testimony of Dr. Abbott. Dkt. # 388. The Court has reviewed the Motion, Plaintiffs' response, Dkt. # 391, Defendants' reply, Dkt. # 394, and all documents submitted in support thereof. For the reasons set forth below, the Court DENIES Defendants' Motion.

## I. BACKGROUND

The parties are familiar with the claims and allegations underlying this case, and the Court summarizes them here only in brief. Defendants ABM Industries, Inc. and American Building Maintenance Co.-West (collectively, "ABM" or "Defendants") provide janitorial services to a number of commercial and industrial facilities throughout the country, employing approximately 2,500 janitorial employees in the State of Washington. Plaintiffs claim that ABM violated the Fair Labor Standards Act ("FLSA") and Washington's Wage and Hour laws, in

1  addition to breaching its contractual obligations, by forcing employees to work "off-the-clock,"
2  failing to provide adequate rest breaks, requiring employees to work through meal periods, and
3  failing to pay overtime.
4       On February 18, 2010, the Court granted conditional certification with respect to
5  Plaintiffs' FLSA claims, Dkt. # 278, and on December 1, 2011 the Court denied Defendants'
6  decertification motion. Dkt. # 397. In support of their briefing on the decertification motion,
7  and in connection with a prior discovery dispute, Plaintiffs submitted declarations from Dr.
8  Robert D. Abbott, Ph.D., their statistics, wage and hours expert. Dkt. ## 366, 371, 381. In his
9  various declarations to the Court, Dr. Abbott opines that damages for the entire class may be
10 calculated on a representative basis, and he offers a calculation of those damages. *Id*. Plaintiffs
11 have indicated that Dr. Abbott intends to testify at trial regarding these issues.
12      In calculating class-wide damages, Dr. Abbott analyzed a sample group of 61 opt-in class
13 members (collectively, the "sample group"). Based on payroll data received from ABM
14 regarding the sample group members' respective branches, number of pay periods, total hours
15 worked, and non-overtime hours worked, Dr. Abbott determined that the testimony of the sample
16 group provides a representative sample of the 350 class members. Dkt. # 381 (Abbott Decl. ¶¶
17 1-4). After determining that the sample group was representative, Dr. Abbott calculated
18 damages for each individual member of the sample group, in addition to three class
19 representatives (bringing the number of individuals in the sample group to 64). *Id*. ¶¶ 12-24. Dr.
20 Abbott then calculated the average amount of damages (not including interest) for each pay
21 period based upon the sample of 64 and multiplied that number by the total number of weeks
22 worked by the individuals in the non-sample group. *Id*. ¶¶ 25-32. According to Dr. Abbott, the
23 total actual damages of the class under this methodology is $1,035,558.42. *Id*. ¶ 32.
24

On October 27, 2011, Defendants filed the instant Motion, seeking to exclude and strike the expert testimony of Dr. Abbott pursuant to Federal Rule of Evidence 702 ("FRE 702"). Dkt. # 388. According to Defendants, Dr. Abbott's testimony is not based upon sufficient facts or data, his opinions are not the product of reliable principles or methods, and he has failed to apply such principles and methods reliably to the facts of this case. *Id*. In support of that position, Defendants rely upon the rebuttal report of Dr. Christina G. Banks, Ph.D., their own statistics, wage and hours expert. Dkt. # 389 (Terwilliger Decl., Ex. A (Rebuttal Report of Dr. Banks)).

## II. ANALYSIS

A.  Legal Standard

FRE 702 permits witnesses qualified as experts by "knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" about "scientific, technical, or other specialized knowledge" if that knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." FRE 702. The expert's testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods." *Id*. Furthermore, the expert must apply these "principles and methods reliably to the facts of the case." *Id*.

Trial courts must act as "gatekeepers" by deciding whether to admit or exclude expert testimony under FRE 702. *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 589 (1993) ("*Daubert I*"). FRE 702 permits a flexible, fact-specific inquiry that embodies the twin concerns of reliability and helpfulness. *See Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 150-51 (1999). The test for reliability "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*"). The test for helpfulness is essentially a relevancy inquiry. *See Daubert I*,

509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, nonhelpful." (internal quotation marks omitted)). Accordingly, under FRE 702, trial courts may exclude testimony that falls short of achieving either of the rule's dual concerns. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010); *see also* Advisory Committee Notes to the 2000 Amendments to Rule 702 ("[R]ejection of expert testimony is the exception rather than the rule. . . .").

B. Discussion

    1. *Qualifications*

There is no dispute that Dr. Abbott is qualified to testify as an expert regarding the matters contained in his various declarations. Having reviewed Dr. Abbott's qualifications – including his educational and professional background, together with his prior experience as both a consulting and testifying expert – the Court is convinced that he is qualified to offer the opinions contained in his declarations.

    2. *Reliability*

        a. **Sufficiency of Facts and Data Relied Upon by Dr. Abbott**

Defendants contend that Dr. Abbott relied upon insufficient facts and data in forming the opinions set forth in his various declarations. They advance four arguments in support of this position. First, Defendants claim that statements made by Dr. Abbott during his deposition demonstrate that he conducted an incomplete analysis of the issues on which he opines. These statements include the following:

- Dr. Abbott was unaware that more than twenty-five (25) individuals testified that they did not miss any meal or rest breaks, and that they did not work off-the-clock.

1
- Dr. Abbott did not know how the sample group was selected.

2
- Dr. Abbott did not know that more than ninety percent (90%) of the individuals who had an opportunity to opt-in to this action declined to do so.

3

4
- Dr. Abbott admitted that he did not "have any information" about whether employees who were assigned to the same branch worked in the same way, had the same supervisor, worked similar hours, or shared any other common characteristics aside from branch number.

5

6  Dkt. # 388 at 4.

7   This testimony does not demonstrate that Dr. Abbott relied upon incomplete facts and
8  data. Although Defendants do not identify the "more than twenty-five" individuals in question,
9  it appears that Defendants are referring to the twenty-six *non-class members* who submitted
10 declarations on Defendants' behalf in response to Plaintiffs' certification motion. *See* Dkt. ##
11 108-134. Defendants do not explain how the experiences of non-class members are relevant to
12 the issues of representativeness and damages with respect to the class, and the Court can perceive
13 no reason why Dr. Abbott's failure to consider the twenty-six declarations at issue renders his
14 analysis incomplete.

15   As to the remaining facts allegedly not considered by Dr. Abbott, Defendants have not
16 explained why these facts would have been relevant to his analysis, nor have Defendants
17 demonstrated that Dr. Abbott's conclusions would have been different in the event he had
18 considered those facts. *See EEOC v. Gen. Tel. Co. of NW, Inc.*, 885 F.2d 575, 580 (9th Cir.
19 1989) ("When statistical evidence is challenged on methodological grounds, the burden should
20 be on the challenger to present evidence that the statistics are defective and how that flaw biases
21 the result." (*citing* D. Baldus & J. Cole, *Statistical Proof of Discrimination*, vii (1987 Supp.))).

22   Second, Defendants argue that Dr. Abbott's conclusions are unreliable because some of
23 the data on which he relied was "interpreted" by Plaintiffs' counsel. Although most of the opt-in

24

1  plaintiffs testified to missing meal and rest breaks and to working off-the-clock, some opt-in

2  plaintiffs did not explicitly indicate how many breaks they missed or how many hours they

3  worked off-the-clock.  In such instances, Plaintiffs' counsel "interpreted" the testimony in

4  question to come up with the missing information, and asked Dr. Abbott to assume for purposes

5  of his analysis that those "interpretations" were correct.  *See* Dkt. # 389 (Terwilliger Decl., Ex. A

6  (Rebuttal Report of Dr. Banks, Ex. 3 (table of "interpreted" testimony))).  An expert's opinion,

7  where based on assumed facts, must find some support for those assumptions in the record.  *See*

8  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (*quoting Shaw v. Stackhouse*,

9  920 F.2d 1135, 1142 (3rd Cir. 1990)).  However, mere "weaknesses in the factual basis of an

10  expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility."

11  *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993).

12         Having reviewed the testimony in question, the Court finds that the "interpretations"

13  made by Plaintiffs' counsel are supported by the record and reasonably drawn, particularly in

14  light of the fact that neither Defendants nor Dr. Banks provide any alternative interpretation of

15  the testimony in question, nor do they argue that the interpretations made by Plaintiffs' counsel

16  were unreasonable.  Defendants may challenge the assumptions underlying Dr. Abbott's

17  conclusions during cross-examination at trial.

18         Third, Defendants argue that Dr. Abbott "made no effort to independently assess or

19  verify the data provided to him by Plaintiffs' counsel."  Dkt. # 388 at 5.  But Defendants have

20  pointed to no authority requiring an expert witness to undertake such a responsibility, nor is the

21  Court aware of any.  Indeed, Federal Rule of Evidence 703 ("FRE 703") contemplates that

22  experts will rely upon information provided to them by others, and nothing in the Federal Rules

23  requires an expert witness to "independently assess or verify" the data provided by counsel.  *See*

24

1  FRE 703 ("An expert may base an opinion on facts or data in the case that the expert **has been**
2  **made aware of** or personally observed.") (emphasis added); *see also Giorgio v. Holland Am.*
3  *Line, Inc.*, CASE NO. C05-0038JLR, 2006 U.S. Dist. LEXIS 27143, *7 (W.D. Wash. April 4,
4  2006) ("Unlike other witnesses, expert witnesses need not have personal knowledge of the facts
5  underlying their opinions.").

6       Fourth, Defendants argue that the facts and data relied upon by Dr. Abbott were biased
7  because they were "not collected in any standardized, scientific, or neutral method." *Id*. at 6.
8  Specifically, Dr. Banks notes that some of the information provided to Dr. Abbott resulted from
9  informal interviews between Plaintiffs' counsel and the class members, as opposed to formal
10 depositions or declarations. Dkt. # 389 (Terwilliger Decl., Ex. A (Rebuttal Report of Dr. Banks,
11 at 6)). Dr. Banks opines that information collected in such a manner is "far from what is
12 required for scientific evidence." *Id*. But the single authority cited by Dr. Banks in support of
13 this position – *Reference Guide on Survey Research*[1] – concerns formal survey evidence, not the
14 type of informal information gathering at issue here. Reference Guide, at 231 (distinguishing
15 between survey evidence and "less systematic approaches" of data collection). Because
16 "Plaintiffs' counsel did not conduct a 'survey,'" Dkt. # 389 (Terwilliger Decl., Ex. A (Rebuttal
17 Report of Dr. Banks, at 10)), the standards set forth in the Reference Guide are inapposite.

18      In any event, an objection regarding the manner in which data was collected goes to the
19 weight, and not the admissibility, of Dr. Abbott's testimony. *See*, *e.g.*, *Iron Partners, LLC v.*
20 *Mar. Admin.*, 2010 U.S. Dist. LEXIS 73984 (W.D. Wash. July 21, 2010) (questions regarding
21 the credibility of expert opinions go toward weight, not admissibility).

---

[1] Shari Seidman Diamond, *Reference Guide on Survey Research*, *in* Reference Manual on Scientific Evidence (2d ed. 2000) (hereinafter "Reference Guide").

1                         b.      **Reliability of Principles and Methods Employed by Dr. Abbott**

2        In determining whether the sample group of opt-in plaintiffs is representative of the class

3 as a whole, Dr. Abbott compared the sample group to the entire class with respect to four

4 variables: branch location, total pay periods, total hours worked, and regular hours worked. *See,*

5 *e.g.*, Dkt. # 393 (Supp. Abbott Decl., ¶ 9). Defendants argue that the methodology used by Dr.

6 Abbott is "fatally flawed" because the four variables on which he relies "have nothing to do with

7 the propensity for a person to miss a meal or rest break or work off-the-clock." Dkt. # 388 at 8.

8 The Court disagrees.

9        When comparing the sample group and the class at large, Dr. Abbott assumed –

10 reasonably in the Court's view – that a correlation was likely to exist between the length of time

11 an employee worked with the company and the number of missed breaks and off-the-clock hours

12 reported. Dkt. # 393 (Supp. Abbott Decl., ¶ 9). Indeed, the longer an employee worked at ABM,

13 the more opportunities she or he logically had to miss breaks or work off-the-clock.

14 Accordingly, Dr. Abbott compared the sample group and class at large not only with respect to

15 total pay periods, but also with respect to total and regular hours worked. *Id*. Because these

16 variables relate to an individual's propensity for missing breaks and working off-the-clock, they

17 were an appropriate focus of Dr. Abbott's analysis.

18        Recognizing that the employment practices at issue in this case may have varied by

19 geographic location, Dr. Abbott also compared the sample group and the class at large based

20 upon the branches at which their respective members worked. *Id*. This variable also relates to

21 an individual's propensity for missing breaks and working off-the-clock, as class members who

22 worked at locations where such violations allegedly occurred are more likely to have missed

23 breaks or worked off-the-clock themselves.

24

The Court is convinced that a comparison of the sample group and the class at large based upon these particular variables reliably tests the representativeness of the sample group regarding the issues of missed breaks and off-the-clock work.

Defendants argue that any analysis of variability between the sample group and the class at large should take into account four additional variables not considered by Dr. Abbott – namely, pay rate, employment status (i.e., active or terminated), branches worked in by individual branch, and overtime hours worked and compensated. Dkt. # 389 (Terwilliger Decl., Ex. A (Rebuttal Report of Dr. Banks, at 19)). When analyzing variability using these additional metrics, Defendants argue, differences between the sample group and the entire class become more significant. *Id*. at 19-21. The Court agrees with Plaintiffs, however, that the differences resulting from application of these other variables do not suggest that those used by Dr. Abbott were unreliable.[2]

Defendants may be correct to assume that, had Dr. Abbott incorporated additional variables into his analysis, the outcome of that analysis would have been more accurate or complete. Defendants are free to develop that argument at trial. However, the fact that Dr. Abbott might have tested different or additional variables does not lead to the conclusion that his testimony should be excluded at trial. Indeed, "the factfinder may be confronted with opposing

---

[2] Notably, with respect to employment status and overtime hours worked and compensated, Dr. Banks found no "statistically significant" difference between the sample group and the larger group. Dkt. # 389 (Terwilliger Decl., Ex. A (Rebuttal Report of Dr. Banks, at 19-20)). Even though Dr. Banks found some differences between the sample group and the class at large with respect to "branch worked in by individual branch," she did not test for significance with respect to that variable. *Id*. As to pay rate, Dr. Banks found that the class as a whole received a mean pay rate that was $.050 per hour greater than that of the sample group, *id*. at 19 – a finding that, if established, demonstrates that Dr. Abbott's calculation of damages is actually *too low*. Although these *conclusions* differ in part from those of Dr. Abbott, none of them suggests that the *methods* applied by Dr. Abbott were unreliable.

experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony. But their presence should not preclude the admission of the expert's testimony - they go to the weight, not the admissibility." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th Cir. 1998).

   c. **Reliability of Dr. Abbott's Application of Principles and Methods to the Facts of This Case**

  Defendants raise two general arguments as to why Dr. Abbott was unreasonable in applying his principles and methods to the facts of this case. First, in determining whether there were significant differences between the sample group and the class at large with respect to the four variables discussed above, Dr. Abbott quantified those differences using the mean/average measure of central tendency rather than the median. *See* Dkt. # 371 (Abbott Decl. ¶¶ 3, 9, 25).[3] Defendants argue that "Dr. Abbott's computation of aggregate damages is inherently skewed to result in a higher damages figure" because, when the sample group is relatively small, the mean is "overly influenced by the presence of extreme values in the group." Dkt. # 388 at 9-10; Dkt. # 389 (Terwilliger Decl., Ex. A (Rebuttal Report of Dr. Banks, at 21)). Dr. Banks asserts that, in cases such as this one, use of the median "best represents the range of values." *Id*. Dr. Abbott responds that use of the median in this instance poorly estimates damages for the non-sample group because it fails to account for individual differences between the class members. Dkt. # 393 (Abbott Decl. ¶ 16).

  The Court expresses no opinion as to which measure of central tendency is most appropriate here. For purposes of the present motion, it is sufficient for the Court to conclude – as it does – that the mean is not an *unreliable* measure of central tendency. *Daubert II*, 43 F.3d

---

[3] The mean represents the average of values within a particular set, and the median represents the "middle most" value.

1    at 1318 (test for reliability "is not the correctness of the expert's conclusions but the soundness

2    of his methodology"). While it is possible that the median is a better tool for measuring damages

3    under the circumstances presented, that possibility, by itself, is not a basis for excluding Dr.

4    Abbott's testimony. *Primiano*, 598 F.3d at 564 ("Shaky but admissible evidence is to be

5    attacked by cross examination, contrary evidence, and attention to the burden of proof, not

6    exclusion.").

7        Second, Defendants argue that Dr. Abbott's conclusions regarding the damages of those

8    plaintiffs who are not members of the sample group are "wholly unreliable" because "he cannot

9    offer any opinion whatsoever about the merits of individual claims of any of the non-sample

10    Plaintiffs." Dkt. # 388 at 10. This argument is unpersuasive. Dr. Abbott is not being asked to

11    testify regarding the merits of this case. As such, his knowledge (or lack thereof) regarding the

12    merits of certain individual claims does not suggest that his opinions regarding the issues of

13    representativeness and damages are unreliable.

14          3.     *Helpfulness*

15        There is no dispute regarding the relevancy or helpfulness of Dr. Abbott's testimony.

16    The Court concludes that such testimony will be helpful to the jury because it concerns the issues

17    of representativeness and damages.

18                                **III. CONCLUSION**

19        For all of the foregoing reasons, Defendants' Motion to Exclude and Strike Expert

20    Testimony of Dr. Abbott, Dkt. # 388, is DENIED. The scheduling order (Dkt. # 353) is

21    modified as follows:

22

23

24

| EVENT | DATE |
|---|---|
| All dispositive motions must be filed and noted on the motion calendar for the fourth Friday thereafter | 1/6/11 |
| Plaintiffs serve Defendants with trial witness and exhibit lists pursuant to CR 16(h)(6) and (7) | 1/19/12 |
| Defendants serve Plaintiffs with trial witness and exhibit lists pursuant to CR(i)(5) and (6) | 1/29/12 |
| All motions in limine must be filed by and noted on the motion calendar no later than the second Friday thereafter | 2/13/12 |

| EVENT | DATE |
|---|---|
| Agreed pretrial order | 2/29/12 |
| Pretrial conference | To be set by Court |
| Trial briefs, proposed voir dire, jury instructions, and trial exhibits due | 3/7/12 |
| Trial date | 3/12/12 |
| Length of trial | To be determined |

Dated this 29 day of December 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE