1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YEDIDA KHADERA, KEVIN
HUDSON, SAM RICHARDSON,
and ROBERT WASSON, JR.,

                Plaintiffs,

       v.

ABM INDUSTRIES
INCORPORATED and AMERICAN
BUILDING MAINTENANCE CO. -
WEST,

                Defendants.

CASE NO. C08-0417 RSM

**ORDER ON DEFENDANTS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

This matter comes before the Court upon Defendants' Motion for Partial Summary

Judgment.  Dkt. # 413.  Having reviewed the motion, Plaintiffs' response, Defendants' reply,

and all documents submitted in support thereof, the Court GRANTS IN PART and DENIES IN

PART the motion.

## I. BACKGROUND

The parties are familiar with the claims and allegations underlying this case, and the

ORDER

Court summarizes them here only in brief.  Defendants ABM Industries, Inc. ("ABM") and ABM Janitorial Services-Northwest ("ABM Janitorial")[1] (collectively, "Defendants") provide janitorial services to a number of commercial and industrial facilities throughout the country, employing approximately 2,500 janitorial employees in the State of Washington.  ABM Janitorial is a wholly owned subsidiary of a company that is in turn wholly owned by ABM. ABM Janitorial was (and in some cases is) the direct employer of the Plaintiffs.

Plaintiffs claim that Defendants violated the Fair Labor Standards Act ("FLSA") and Washington's Wage and Hour laws, in addition to breaching their contractual obligations, by forcing employees to work "off-the-clock," failing to provide adequate rest breaks, requiring employees to work through meal periods, and failing to pay overtime.  On February 18, 2010, the Court granted conditional certification with respect to Plaintiffs' FLSA claims, Dkt. # 278, and on December 1, 2011 the Court denied Defendants' decertification motion.  Dkt. # 397.  In the December 1, 2011 order, the Court concluded, among other things, that Plaintiffs and the opt-in class members are similarly situated for purposes of 29 U.S.C. § 216(b).  *Id.*

In support of their briefing on the decertification motion, and in connection with a prior discovery dispute, Plaintiffs submitted declarations from Dr. Robert D. Abbott, Ph.D., their statistics, wage and hours expert.  Dkt. ## 366, 371, 381.  In his various declarations to the Court, Dr. Abbott opines that damages for the entire class may be calculated on a representative basis, and he offers a calculation of those damages.  *Id*.  Plaintiffs have indicated that Dr. Abbott intends to testify at trial regarding these issues.

In calculating class-wide damages, Dr. Abbott analyzed a sample group of 61 opt-in

---

[1] Defendant American Building Maintenance Co.-West has changed its name to ABM Janitorial Services-Northwest.  The Court will refer to American Building Maintenance Co.-West herein by its new name.

1   class members (collectively, the "sample group").  Based on payroll data received from ABM

2   regarding the sample group members' respective branches, number of pay periods, total hours

3   worked, and non-overtime hours worked, Dr. Abbott determined that the testimony of the

4   sample group provides a representative sample of the 350 class members. Dkt. # 381 (Abbott

5   Decl. ¶¶ 1-4).  After determining that the sample group was representative, Dr. Abbott

6   calculated damages for each individual member of the sample group, in addition to three class

7   representatives (bringing the number of individuals in the sample group to 64).  *Id*. ¶¶ 12-24.

8   Dr. Abbott then calculated the average amount of damages (not including interest) for each pay

9   period based upon the sample of 64 and multiplied that number by the total number of weeks

10  worked by the individuals in the non-sample group.  *Id*. ¶¶ 25-32.  According to Dr. Abbott, the

11  total actual damages of the class under this methodology is $1,035,558.42.  *Id*. ¶ 32.[2]

12      Defendants now move for partial summary judgment on two separate grounds:  (1) that

13  Plaintiffs have failed to present evidence in support of those opt-in Plaintiffs outside of Dr.

14  Abbott's sample group, and that the claims of those Plaintiffs should therefore be dismissed;

15  and (2) that the FLSA claims of various opt-in Plaintiffs are time-barred.  Dkt. # 413.

## II. DISCUSSION

A.      Standard of Review

Summary judgment is proper if the pleadings, discovery, affidavits and disclosure

materials on file show that "there is no genuine dispute as to any material fact and the movant

is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a) & (c) (as amended

December 1, 2010).  An issue is "genuine" if "a reasonable jury could return a verdict for the

nonmoving party" and a fact is material if it "might affect the outcome of the suit under the

[2] On October 27, 2011, Defendants filed a motion to exclude and strike the expert testimony of Dr. Abbott pursuant to Federal Rule of Evidence 702 ("FRE 702"). Dkt. # 388.  On December 28, 2011, the Court denied that motion.  Dkt. # 403.

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party

has the initial burden of production to demonstrate the absence of any genuine issue of material

fact.  *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023-24

(9th Cir. 2004).

The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which the

nonmoving party has the burden of proof.  *Celotex Corp. v. Cartett*, 477 U.S. 317, 323 (1986).

The Court resolves any factual disputes in favor of the nonmoving party only when the facts

specifically attested by each party are in contradiction.  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

B. Claims of Opt-In Plaintiffs Outside Dr. Abbott's Sample Group

Defendants first seek summary judgment with respect to all opt-in Plaintiffs who were

not included in Dr. Abbott's sample group.  Defendants advance a number of arguments in

support of that position, each of which is addressed in turn.

1. Evidence Supporting Claims of Non-Sample Group Plaintiffs

Defendants first argue that they are entitled to summary judgment with respect to all

non-sample group Plaintiffs because, in their view, "Plaintiffs have proffered *no evidence*

whatsoever to substantiate the allegations that any of the opt-in Plaintiffs outside the 'sample

group' worked hours for which overtime compensation was required by the FLSA and that they

were not paid for them.  Nor do they have any evidence to establish that the 'non-sample

group' opt-in Plaintiffs missed any meal or rest breaks mandated under Washington law."  Dkt.

# 413 at 6-7 (emphasis in the original).  The Court disagrees.

Plaintiffs argue – convincingly in the Court's view – that the record contains ample

evidence from which the finder of fact might reasonably conclude that Defendants adopted a

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

practice of assigning employees more work than they could complete within the allotted time, that Defendants prevented those employees from collecting overtime with respect to the additional time needed to complete their work, and that "[t]hese policies apply to all Opt-in Class Members, including those not within Dr. Abbot's sample group."  Dkt. # 417 at 7.

In support of this position, for example, Plaintiffs point to an email dated October 1, 2008 sent by ABM's Regional Director of Human Resources, in which she stated that "employees working and recording time on the time clocks are not being paid for the hours that they are working.  Based on the time starts and stops they are working more than 10 hours per day in most cases.  They should be paid for all hours worked."  Dkt. # 377, Ex. 49.  Plaintiffs claim that this email put Defendants on notice of a "serious problem with its payroll practices," but that Defendants nevertheless failed to correct the problem.  Dkt. # 417 at 7.

Plaintiffs also point to a 2006 memorandum in which an ABM Branch Manager instructed her crews that they were required to deduct one half-hour out of every work shift over six hours, regardless of whether the employees in question had actually taken their meal breaks.  Dkt. # 377, Ex. 51.  This memorandum, Plaintiffs claim, constitutes additional evidence that ABM violated the legal rights of its employees in general, and not just those within Dr. Abbott's sample group.

Plaintiffs also point to a significant amount of additional evidence from individual AMB employees who have testified (1) that they did not have time to complete their work within the allotted time, (2) that they missed breaks, (3) that they were not compensated for work performed before and after shifts, for drive time, or when they worked through meal periods, and (4) that Defendants were aware of these practices.  Dkt. # 417 at 8-9 n. 1-4.

Based upon their own summary judgment motion, it is clear that Plaintiffs intend to

make use of the *Mt. Clemens* burden-shifting standard, which, under certain circumstances,

allows FLSA plaintiffs to prove their claims as a matter of "just and reasonable inference."

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *McLaughlin v. Seto*, 850

F.2d 586, 589 (9th Cir. 1998).  Although genuine issues of material fact prevent the Court from

determining at present whether the *Mt. Clemens* standard should apply here,[3] the similarities

that exist between Plaintiffs and the opt-in class members[4] would permit a jury to justly and

reasonably infer that non-sample group Plaintiffs have been injured in the same manner as

those within the sample group.  *See McLaughlin* , 850 F.2d at 589 ("We hold that the *Mt.*

*Clemens* standard allows district courts to award back wages under the FLSA to non-testifying

employees based upon the fairly representative testimony of other employees.").

        But even if the Court ultimately concludes that the *Mt. Clemens* standard does not

apply, such a finding would not prevent a reasonable finder of fact from concluding that all opt-

in Plaintiffs have been injured as a result of Defendants' alleged employment practices.

Indeed, "[e]ven in non-Mt. Clemens-type cases, courts have authorized representative

testimony in FLSA cases." *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1280 n.74 (11th

Cir. 2008) (*citing Donovan v. Burger King Corp.*, 672 F.2d 221, 225 (1st Cir. 1982) and *Dole*

*v. Snell*, 875 F.2d 802 (10th Cir. 1989)).  Of course, such an approach is consistent with the

plain language of 29 U.S.C. § 216(b), which states that FLSA actions may be maintained "by

---

[3] The *Mt. Clemens* burden-shifting standard applies where an employer fails to comply with
its record-keeping obligations under the law.  *McLaughlin*, 850 F.2d at 589.  As the Court has
stated in a separate order, genuine issues of material fact exist as to whether Defendants
complied with their record-keeping obligations, and as such, the Court is not presently able to
determine whether the *Mt. Clemens* standard applies here.

[4] In its December 1, 2011 order denying Defendants' motion for decertification, the Court
relied largely upon the same evidence currently before it in concluding, among other things,
that Plaintiffs and the opt-in class members are similarly situated for purposes of 29 U.S.C. §
216(b).  Dkt. # 397, p. 5-6.

1   any one or more employees for and in behalf of himself or themselves and other employees

2   similarly situated."

3       Plaintiffs have presented evidence from which the finder of fact might reasonably

4   conclude that Defendants engaged in a pattern of FLSA and Washington state wage and hour

5   violations, and that those violations were not limited to those individuals within Dr. Abbott's

6   sample group.  The finder of fact could reasonably reach such a conclusion with or without the

7

8   benefit of the *Mt. Clemens* burden-shifting standard.  Accordingly, the Court concludes that

9   Plaintiffs have presented sufficient evidence on behalf of non-sample group Plaintiffs to

10  withstand summary judgment.[5]

11              2.      Sample Group Members Who Allegedly Sustained No Damages

12                  a.      Class At Large

13

14      Seven of the sixty-four sample group members (or 10.94%) admitted to having no

15  damages.  Because the sample group is representative of the class at large, Defendants argue

16  that a corresponding percentage of the class at large – or thirty-one individuals – would

17  likewise admit to having no damages.  As such, Defendants argue that the Court should grant

18  summary judgment as to these thirty-one unidentified individuals.

19

20

21

22  [5] The Court also rejects Defendants' argument that summary judgment must be granted as to
the non-sample group Plaintiffs on account of the fact that Plaintiffs' initial disclosures did not
provide a computation of their individual damages.  The case on which Defendants rely in
23  support of this argument – *Hoffman v. Construction Protective Servs.*, 541 F.3d 1175 (9th Cir.
2008) – is inapposite.  That case involved plaintiffs who did not disclose damage calculations
24  "either for each individual Opt-in Plaintiff other than themselves or for the group as a whole."
*Id*. at 1177-78.  Here, by contrast, there is no dispute that Plaintiffs' initial disclosures
25  estimated damages for the named Plaintiffs and informed Defendants that they would
26  supplement those disclosures once discovery had been taken.  Plaintiffs subsequently produced
Dr. Abbott's expert report, which sets forth the total amount of damages allocated to each opt-
27  in class member on an individual basis.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Court has already addressed this issue, albeit in a slightly different context.  As

noted in the Court's order denying Defendants' motion for decertification, Dkt. # 397,

Plaintiffs' calculation of damages does not attribute any damages to the opt-in Plaintiffs in

question, and assumes that a corresponding percentage of the class at large also sustained no

damages.  *Id*. at 13 n.10; Dkt. # 371 (Abbott. Decl., ¶ 13).  On that basis, the Court concluded

that the possible existence of undamaged Plaintiffs within the class at large did not warrant

decertification, *id*., and, for the same reason, the Court now concludes that the existence of such

individuals does not warrant summary judgment.  *See French v. Essentially Yours Indus*., Case

No. 1:07-CV-817, 2008 U.S. Dist. LEXIS 54550 W.D. Mich. July 16, 2008 (certifying Rule 23

class even though "some members may have different damages or none at all"); *In re Patriot*

*Am. Hospitality Inc. Secs. Litig*., MDL No C-00-1300 VRW, 2005 U.S. Dist. LEXIS 40993,

*13 (N.D. Cal Nov. 30, 2005) (approving class settlement where certain class members

sustained no damages, but where plaintiff's expert was sufficiently able to account for those

class members in allocating damages).

Moreover, "[i]t is well established that 'the allocation of that aggregate sum [of the

judgment] among class members is an internal class accounting question that does not directly

concern the defendant . . . .'"  *Bell v. Farmers Ins. Exch*., 115 Cal. App. 4th 715, 759 (Cal.

App. 1st Dist. 2004) (citation omitted).[6]

                b.        Class Members Who Worked at Branches 27 and 29

Next, Defendants single out two sets of specific non-sample group Plaintiffs who, in

their view, are particularly suitable for summary dismissal:  (1) the seventeen class members

---

[6] Although *French*, *Patriot Am. Hospitality*, and *Bell* involved Rule 23 class actions, courts within this circuit have recognized that Rule 23 cases can be instructive within the FLSA context.  *See*, *e.g.*, *Colson v. Avnet, Inc*., 687 F. Supp. 2d 914, 928 (D. Ariz. 2010).

assigned to work in Branch 29 (the Bellevue branch), and (2) the nineteen Plaintiffs assigned to

work in Branch 27 (the SeaTac branch).  Each set of Plaintiffs is addressed in turn.

i.       Plaintiffs Who Worked in Branch 29

Although eighteen Plaintiffs worked within Branch 29, only one of them was included

in Dr. Abbot's sample group.  That class member – Sabino Camarena – admitted to having no

damages and Plaintiffs have therefore dismissed him from the case.  Because Camarena was

the only sample group member who worked within Branch 29, and because Camarena

sustained no damages, Defendants argue that the Court must logically conclude that none of the

seventeen remaining Plaintiffs who worked within Branch 29 sustained any damages either.

The Court disagrees.  Evidence before the Court suggests that the experiences of those

employees who worked within Branch 29 overlapped not only with the experiences of

Camarena, but also in part with those of ABM employees working within other branches.

Indeed, Plaintiffs have submitted evidence that Branch 29 did not have its own branch

manager, and that the employees who worked within that branch reported directly to Regional

Vice President Adam Folz – the same person who supervised the Seattle, Everett, Tacoma and

Microsoft branches.  Dkt. # 188, Ex. 3.  There is no dispute that many of the opt-in Plaintiffs

who remain in the case worked within those other branches.  In light of this evidence, the Court

cannot conclude – logically or legally – that none of the remaining sample group members are

representative of the Branch 29 Plaintiffs, nor can the Court summarily conclude that those

particular Plaintiffs sustained no damages.  Resolution of these issues must await trial.  Fed. R.

Civ. P. 56(a).

ii.      Plaintiffs Who Worked in Branch 27

Although nineteen Plaintiffs worked within Branch 27, only five of them – John

1
2
3
4
5
6
7
8

Burrows, William Ketchersid, Clark Kravagna, Sherri Ortiz, and Andrew Young – were included within Dr. Abbott's sample group.  Pointing to Dr. Abbott's expert report, Defendants assert that "all five of these 'sample' Plaintiffs admit that they experienced **zero** hours of off-the-clock work per week."  Dkt. # 413 at 17.  Although none of these Plaintiffs have been dismissed from the case, Defendants argue that their lack of any off-the-clock work should be construed by the Court as evidence that none of the other Plaintiffs who worked within Branch 27 sustained any damages.  The Court disagrees.

9
10
11
12
13
14

Although the five sample Plaintiffs in question did not report experiencing any off-the-clock work, the evidence demonstrates that, with respect to four of them, Defendants deducted a half-hour from their respective timecards even though each of them reported working through their meal breaks.  *See* Dkt. # 381-3.  As such, there is evidence from which the finder of fact might reasonably conclude that Plaintiffs who worked within Branch 27 sustained damages.

15

B.      FLSA Statute of Limitation

16
17
18
19
20
21

The FLSA permits complaints for unpaid wages or overtime for two years "after the cause of action accrued."  29 U.S.C. § 255(a).  However, where willful violations of the FLSA are involved, the applicable limitation period is three-years. *Id*.  Pursuant to 29 U.S.C. 256(b), an opt-in plaintiff is deemed to have commenced an action under the FLSA when he or she actually files with the court a notice of consent to join in the collective action.

22
23
24
25
26
27

Although Defendants argue that the FLSA's two-year statute of limitation should apply here – an argument the Court addresses below – they assert that the claims of seventeen opt-in Plaintiffs would be time-barred even under the three-year limitation period.  The Court agrees.  Indeed, the evidence before the Court demonstrates that seventeen opt-in Plaintiffs (collectively, the "Non-FLSA Plaintiffs") were "separated from employment" with ABM more

1   than three years prior to the time that they consented to join in this collective action.[7]  Here,

2   Plaintiffs do not dispute that the FLSA claims of the Non-FLSA Plaintiffs are time barred.

3   Accordingly, their FLSA claims are dismissed.

4          Defendants assert that, when applying a two-year limitation period, the FLSA claims for

5   an additional eighty (80) opt-in Plaintiffs are time-barred.  *See* Dkt. # 414-1, Ex. B.  Moreover,

6   Defendants argue that the FLSA's two-year limitation period applies here because there is no

7   evidence to support the assertion that they willfully violated the statute.  To establish a willful

8   violation, an employee must prove that his employer knew or recklessly disregarded that its

9   conduct violated the FLSA.  *Alvarez v. IBP, Inc*., 339 F.3d 894, 908 (9th Cir. 2003).  Reckless

10  disregard of the FLSA's requirements is defined as "failure to make adequate inquiry into

11  whether conduct is in compliance with the [FLSA]."  5 C.F.R. § 551.104.  Here, genuine issues

12  of material fact prevent the Court from determining which limitation period applies.

13

14          Indeed, there is evidence in the record that opt-in Plaintiffs complained to their

15  supervisors and upper management that they were not being paid for all hours worked.

16  Moreover, an internal audit at ABM's Spokane branch revealed that employees were not being

17  paid for all hours that they had worked.  Dkt. # 377, Ex. 49.  This evidence tends to suggest that

18  Defendants were on notice of wage and hour violations, but did nothing to correct them.

19

20          By contrast, Defendants point to their own written wage and hour policies, which at

21  least facially comply with Washington law and the FLSA.  Defendants also argue that while the

22  evidence presented by Plaintiffs may relate to individual wage and hour complaints by specific

23

24

25  ---

    [7] The Non-FLSA Plaintiffs are:  Patsi M. Lickford, Seferina P. Medrano, Paul Y. Du, Olga
26  Rovirosa, Sean D. Bliss, Shawn Gatlin, Monica E. Kruz'e, Karidja Lingane, Reynaldo
    Cavazos, Quoc Le, Georgina H. Miller, Leah M. Frost, Lourdes Cruz, Michael D. Dalton,
27  Kenneth L. Lving, Belinda A. Morguneko, and Melissa A. Muir.  *See* Dkt. # 414-1, Ex. A.

1    employees, "Plaintiffs have no evidence that these complaints have been raised on any

2    systematic level in Washington."  Dkt. # 413 at 21.  This conflicting evidence and the

3    arguments flowing from it constitute genuine issues of material fact that must await resolution

4    at trial.  Fed. R. Civ. P. 56(a).

5

6        C.        Supplemental Jurisdiction

7        Because the Non-FLSA Plaintiffs no longer have any federal claims, Defendants argue

8    that the Court should decline to exercise supplemental jurisdiction over their respective state

9    law claims.  The Court disagrees.

10       Where a plaintiff invoking the court's federal question jurisdiction also brings related

11   state law claims, and where the federal claims at issue are dismissed before trial, the court may

12   decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. §

13   1367(c)(3).  "While discretion to decline to exercise supplemental jurisdiction over state law

14   claims is triggered by the presence of one of the conditions in § 1367(c)," that discretion is

15   informed by the values of "'economy, convenience, fairness, and comity.'"  *Acri v. Varian*

16   *Assocs*, 114 F.3d 999, 1001 (9th Cir. 1997) (citation omitted).

17

18       Here, the values of economy, convenience, fairness, and comity weigh in favor of trying

19   the Non-FLSA Plaintiffs' state law claims together with those of the remaining Plaintiffs.

20   Indeed, this case has been pending for nearly four years and is now on the eve of trial.  During

21   the pendency of this action, the Court has become familiar with both the FLSA and state law

22   claims before it.  Dismissing the state law claims of Non-FLSA Plaintiffs at this late stage of

23   the proceedings – after the Court has already entered numerous orders and is itself preparing

24   for trial – would be highly inefficient.  Because Defendants could have sought the requested

25   relief earlier in this case, at which time their position would have been more compelling, there

26

27

1   is nothing unfair about denying that request now.

2          Retaining supplemental jurisdiction over the Non-FLSA Plaintiffs will not be

3   inconvenient, as their state law claims will overlap with the claims of other Plaintiffs in this

4   action, which will depend largely upon representative testimony.  Finally, retaining

5   supplemental jurisdiction over the Non-FLSA Plaintiffs does not pose any problems of judicial

6
7   comity, as the state law issues presented here are neither novel nor complex.  Accordingly, the

8   Court shall continue to exercise supplemental jurisdiction over the state law claims of the Non-

9   FLSA Plaintiffs.

10                              **III. <u>CONCLUSION</u>**

11          For all of the foregoing reasons, Defendants' motion for partial summary judgment is

12   GRANTED IN PART and DENIED IN PART as follows:

13
        (1)     The motion is GRANTED as to the FLSA claims of the Non-FLSA Plaintiffs.
14              The Court will, however, retain supplemental jurisdiction over their respective
                state law claims.
15
        (2)     The motion is otherwise DENIED.
16

17
     Dated this 22nd day of February 2012.
18

19

20

21                                          RICARDO S. MARTINEZ
22                                          UNITED STATES DISTRICT JUDGE

23

24

25

26

27